## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JALINSKI ADVISORY GROUP, INC. ) <br> and ) <br> WEALTH QUARTERBACK, ) <br> ) <br> Plaintiffs, ) <br> ) No. 4: 19 CV 1914 DDN <br> v. ) <br> ) <br> JBL FINANCIAL SERVICES, INC., ) <br> ) <br> Defendant. ) | |

### MEMORANDUM & ORDER

This matter is before the Court on the renewed motion of defendant JBL Financial Services, Inc. for summary judgment. (Doc. 168.) The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §§ 1114 and 1125. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

For the reasons set forth below, defendant's motion for summary judgment is denied.

### BACKGROUND

The following facts are uncontroverted by the parties, unless otherwise noted. Plaintiff Jalinski Advisory Group (JAG) is a New Jersey corporation providing insurance products; plaintiff Wealth Quarterback, a corporation affiliated with plaintiff, provides investment advisory services. (Plaintiff Jalinski Advisory Group, Inc., and Defendant JBL Financial Services, Inc.'s First Amended Joint Statement of Contested and Uncontested Material Facts ¶¶ 1g, 1i, 113a (hereinafter SOF ¶ __)). Plaintiff JAG began using the marks "Financial Quarterback" or "The Financial Quarterback" in reference to its services at least as early as 2006. SOF ¶ 136a. Plaintiff JAG is the owner of the trademark "The Financial

Quarterback" and "Financial Quarterback" under four different registration numbers: 4722740, 5346563, 5633102, and 5346562. SOF ¶¶ 17a-b. Plaintiff JAG is also the owner of the "The Financial Quarterback" trademark under registration number 3782665, which is identified by the U.S. Trademark Office as being "cancelled" and "dead" due to plaintiff's voluntary abandonment of the registration. SOF ¶¶ 18-20a. Plaintiff JAG and plaintiff Wealth Quarterback have never had a written trademark license agreement, and Wealth Quarterback does not pay plaintiff for use of the mark. SOF ¶ 126a.

Defendant is a St. Louis-based entity providing a variety of financial and retirement planning and advisory services, which it promotes using the term "Retirement Coach." SOF ¶¶ 35, 41 60a, 60c, 61a. Since as early as December 1, 2004, defendant has used "Retirement Coach" in its newsletter, "The Coach's Corner." SOF ¶ 60a. Defendant has also been using the term "Retirement Coach" in its radio program, "Straight Talk on Retirement," since May 2006. SOF ¶ 61a. Defendant's radio program is terrestrially broadcast in eastern Missouri and central Illinois, and it has been available via internet streaming since 2007. SOF ¶¶ 61b, 62a. Defendant also uses the word "coach" and phrase "Retirement Coach" frequently when posting on social media. SOF ¶¶ 181a, 182a.

In July 2017, defendant hired a third party, FMG Suite, to update its website; in the process, FMG Suite added "financial quarterback" and "quarterback" into the content of the website. SOF ¶ 177a. Plaintiffs identified multiple uses of "financial quarterback" by defendant on defendant's website and social media pages, in close proximity to links to and/or advertisements for defendant's newsletter and radio program. SOF ¶¶ 71b, 174b. In May 2017, defendant posted the following message on Facebook: "We pride ourselves on always simplifying complex terms into understandable terminology to come up with a game plan that works for you! #finance #retirement #quarterbacks #gameplan #coachingsession." (Doc. 124-36 at 2.) In April 2018, defendant posted messages on Facebook and Twitter that each included the sentence "We pride ourselves on being your financial quarterbacks!" (*Id*.) These three social media posts, as well as three posts from March 2018 that did not include the words "financial" and/or "quarterback," include an image of a football team. (*Id*. at 2-6.) Screen captures from defendant's website as of

2

October 2016 and July 2017 show that the defendant described itself as "coach, quarterback, and adviser" for its clients. (Doc. 124-5 at 3; Doc. 124-20 at 3; Doc. 67-4 at 4.) Additionally, screen captures from October 2017, April 2018, and January 2019 show that defendant's website included the phrase "We pride ourselves on being your financial quarterbacks." (Doc. 67-4 at 1-3.)

Defendant learned of the use of "financial quarterback" on its website on July 13, 2019, after plaintiff JAG filed this action. SOF ¶ 178a. Defendant removed the phrase "financial quarterback" from its website on July 15, 2019. SOF ¶ 80a. Plaintiffs have not identified an instance wherein defendant used "Financial Quarterback" or "The Financial Quarterback" in defendant's newsletter or radio program. SOF ¶ 174a. There is no evidence that defendant was aware of plaintiff prior to the filing of this action. SOF ¶ 147a.

Plaintiff JAG has one client in Missouri but states that it has received calls from potential clients located in Missouri. SOF ¶¶ 81, 82a. Defendant serves some clients in states where plaintiff has a presence, including Texas and Florida; however, the majority of its clients reside in Missouri and Illinois. SOF ¶¶ 85, 87b. Plaintiffs have not identified any actual confusion or lost leads due to defendant's use of the phrase "Retirement Coach." SOF ¶¶ 93a, 94a.

Defendant previously filed several motions for summary judgment. (Doc. 89, 90, 91, 93.) On April 20, 2022, the Court granted the motions for summary judgment on the issues of defendant's superior common law rights in "Retirement Coach" and the non-infringement of U.S. Registration No. 3782665. It denied the motion for summary judgment as to damages alleged by Wealth Quarterback. Most relevant here, it granted in part and denied in part the motion for summary judgment as to likelihood of confusion, granting the motion as it related to defendant's use of "Retirement Coach" alone, but otherwise denying it. (Doc. 155.)

Now before the Court is defendant's renewed motion for summary judgment on the issue of fair use. (Doc. 168.)

## **DISCUSSION**

Summary judgment is appropriate "if there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." *Shrable v. Eaton Corp.*, 695 F.3d 768, 770 (8th Cir. 2012); *see also* Fed. R. Civ. P. 56(a). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence may prompt a reasonable jury to return a verdict for either the plaintiff or the defendant, and it is material if it would affect the resolution of a case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252 (1986); *Rademacher v. HBE Corp.*, 645 F.3d 1005, 1010 (8th Cir. 2011).

The burden shifts to the non-moving party to demonstrate that disputes of fact do exist only after the movant has made its showing. *Anderson*, 477 U.S. at 252. It is the nonmoving party's burden to set forth affirmative evidence and specific factual support by affidavit and other evidence to avoid summary judgment. *Id.* at 256; *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). If reasonable minds could differ as to the import of the evidence, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

Fair use is an affirmative defense to trademark infringement where the use of the mark "is descriptive of and used fairly and in good faith only to describe the goods or services" of the allegedly infringing party. 15 U.S.C. § 1115(b)(4). The Supreme Court has recognized that "some possibility of consumer confusion must be compatible with fair use." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004). Even where the plaintiff claiming infringement has shown likelihood of confusion, "the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense that a term is used descriptively, not as a mark, fairly, and in good faith." *Id*. at 124.

*Descriptive fair use*

Defendant argues that its use of "financial quarterback" was descriptive of its services and that the mark itself is descriptive; therefore, its uses were descriptive fair use. (Doc. 169 at 14-15.)  It emphasizes that its uses of the mark were in good faith and were not visually prominent. (*Id*.)

Plaintiffs argue in response that, in the absence of a controlling test in the Eighth Circuit, the Court should analyze descriptive fair use using the test created by the Ninth Circuit in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005). (Doc. 175 at 9.)  The relevant factors include (1) the degree of likely confusion; (2) the strength of the trademark; (3) the descriptive nature of the term for the product or service being offered by the defendant and the availability of alternate descriptive terms; (4) the extent of the use of the term prior to the registration of the trademark; and (5) any differences among the times and contexts in which the defendant has used the term. *KP Permanent*, 408 F.3d at 609.   Plaintiffs contend that the degree of likely confusion and the strength of the trademark are jury issues. (Doc. 175 at 13.)  They argue that "financial quarterback" is not descriptive of defendant's services, and alternative descriptions of its services are available. (*Id*. at 15.)  They contend that, while other banks and institutions used the phrase "financial quarterback" prior to plaintiff JAG's adoption of it, such use was not descriptive or continuous and consistent. (*Id*. at 16.)  Last, they assert that there are no allegations or evidence as to differences among the times and contexts in which defendant used the mark. (*Id*. at 17.)

In its reply, defendant also analyzes the facts using the *KP Permanent* test.  It asserts that there is no likely confusion and the plaintiff JAG's mark is descriptive. (Doc. 177 at 5.)  It contends that its use of "financial quarterback" is descriptive because defendant otherwise describes itself as the "Retirement Coach." (*Id*.)  It argues that "financial quarterback" has been used extensively across decades and industries. (*Id*. at 5-6.)  Lastly, it asserts that its uses have been itemized by the Court, and it did not use the mark as its own trademark. (*Id*. at 6.)

5

Because courts in the Eighth Circuit have engaged in little analysis of descriptive fair use since the Supreme Court decided *KP Permanent* in 2004, this Court analyzes defendant's fair use defense under the Ninth Circuit's test for descriptive fair use. *KP Permanent*, 408 F.3d at 609. In its April 20, 2022, order, this Court addressed a few of the factors in the *KP Permanent* test. (Doc. 155.) After considering the six *SquirtCo* factors, the Court concluded that genuine disputes of material fact precluded summary judgment as to likelihood of confusion. (*Id*. at 23); *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980). Regarding the first *SquirtCo* factor, the strength of the "financial quarterback" mark, the Court concluded that reasonable fact finders could come to different conclusions. (Doc. 155 at 17.) The Court noted that while "financial quarterback" has been used by banks and other financial institutions in the past, the phrase does not immediately convey an idea of the services that plaintiff offers. (*Id*.) Therefore, a genuine dispute of material fact exists as to whether the mark is descriptive, rather than suggestive or arbitrary or fanciful. (*Id*.)

The third factor in the *KP Permanent* test asks the Court to consider whether the mark is descriptive of defendant's services and whether alternate descriptive terms are available. Defendant contends that it keeps with its financial theme, and is therefore descriptive, for the "Retirement Coach" to further describe itself as consumers' "financial quarterback." (Doc. 177 at 5.) However, maintaining a theme is not the same as using a term to describe the products or services being offered. "How a particular word has been used and how it has been understood by the public is a question of fact." *WSM, Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th Cir. 1984). Viewing the evidence in the light most favorable to plaintiff, a genuine dispute of material fact exists as to whether "financial quarterback" is descriptive of defendant's services.

The fifth factor looks to any differences in the times and contexts that defendant used the mark. Defendant used "financial quarterback" in three social media posts in May 2017 and April 2018, as well as on its website from July 2017 to July 2019. SOF ¶¶ 177a, 178a; Docs. 67-4, 124-36. All of defendant's uses were within a two-year period and in the context of advertising its services. While the posts on social media became less visible

to consumers as defendant continued to post on its pages, the placement of the phrase on the website did not change during the period of alleged infringement. As previously discussed by the Court, "financial quarterbacks" appears in the smallest text size used on the webpage. (Doc. 155 at 19; Doc. 67-4 at 1-3.) The use of the term on the website was not visually prominent compared to other text on the page, but it was continuous. The Court concludes that this factor is neutral.

Because genuine issues of material fact remain as to several *KP Permanent* factors, the Court denies defendant's motion for summary judgment on the issue of descriptive fair use.

### De minimis *fair use*

Defendant contends that its uses of plaintiff JAG's mark were *de minimis* and inconsequential, as the three uses that occurred on social media posts were buried by subsequent posts, such that a potential consumer would not see them after a few days. (Doc. 169 at 16-17.) It further argues that its uses on the website were sporadic, appeared in small font, and were buried in the depths of the webpage. (*Id*. at 17.)

In response, plaintiffs argue that a defense of *de minimis* use is not available for a claim of trademark infringement. (Doc. 175 at 9.) Plaintiffs also argue that defendant's use of "financial quarterback" on the home page of its website was continuous for almost two years and cannot be considered *de minimis*. (*Id*. at 7.) They contend that cached versions of the web page continue to appear in search results and that the social media posts continued to exist after defendant removed the mark from its website. (*Id*. at 7-8.) Plaintiffs also assert that defendant used the mark as metadata to drive internet search results. (*Id*. at 8, 11.)

Defendant asserts in reply that it used the mark on an interior page of the website, and it was not used in a source-identifying manner. (Doc. 177 at 2.) It contends that potential customers would not look at cached internet or social media pages, and it argues that it did not use the mark as a metatag to drive search results. (*Id*. at 3-4.) It argues that the principles of *de minimis* copyright infringement also apply to trademarks. (*Id*. at 4.)

7

The Court first considers whether the doctrine of *de minimis non curat lex* is a defense to claims of trademark infringement. None of the cases cited by defendant consider the defense in the context of trademark infringement. *Purdy v. Burlington Northern Santa Fe Corp.* did not concern trademark infringement, but rather a determination of plaintiff's rights to a service mark. 21 F. App'x. 518, 520 (8th Cir. 2001). Additionally, while the court in *Walker Mfg., Inc. v. Hoffmann, Inc.* found "the doctrine of *de minimis non curat lex* has been expressly applied in cases involving both copyright and trademark–or at least, trade dress–infringement," it considered the doctrine only in the context of copyright infringement. 261 F.Supp.2d 1054, 1063 (N.D. Iowa 2003). The Second Circuit in *Knickerbocker Toy, Inc. v. Azrak-Hamway Intern., Inc.* also discussed the doctrine in the context of a copyright infringement claim and not in the context of trademarks. 668 F.2d 699, 703 (2d Cir. 1982). Lastly, while the Eighth Circuit in *Duluth News-Tribune, a Div. of Northwest Publications, Inc. v. Mesabi Pub* held that *de minimis* evidence of actual confusion is insufficient to establish a genuine dispute of material fact, it did not discuss *de minimis non curat lex* as a defense to trademark infringement. 84 F.3d 1093, 1099 (8th Cir. 1996). The Court therefore concludes that the doctrine of *de minimis non curat lex* is not a defense to claims of trademark infringement, and defendant's motion for summary judgment on this ground is denied.

### *Actual confusion and strength of plaintiff's mark*

Last, defendant argues that there are no instances of actual confusion and that plaintiff JAG's marks are weak, if valid marks at all. (Doc. 169 at 17-18.) Plaintiffs argue that the Wallace survey provides evidence of actual confusion. (Doc. 175 at 8-9.)

The Court addressed defendant's argument regarding actual confusion and the strength of plaintiff JAG's mark in its April 20, 2022, order. "[A]ctual confusion is not essential to a finding of trademark infringement, although it is positive proof of likelihood of confusion," and survey evidence may be sufficient to support an inference of likelihood of confusion. *SquirtCo.*, 628 F.2d at 1091. This Court found that the results of a survey conducted by plaintiff's expert Rob Wallace were sufficient to demonstrate a genuine

8

dispute of material fact.  (Doc. 155 at 22.)  Additionally, as discussed above, the Court previously concluded that the strength of plaintiff's mark is a genuine dispute of material fact.  Defendant has not adduced new evidence or argued that the Court should reconsider its prior rulings, so the Court denies defendant's motion for summary judgment on these grounds.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the renewed motion of defendant JBL Financial Services, Inc. for summary judgment as to fair use **[Doc. 168] is denied.**

                                                                   /s/   David D. Noce    
                                           **UNITED STATES MAGISTRATE JUDGE**

Signed on September 29, 2022.